the houses.   The other two lots remained in the ownership of Griel, and, as the lien included them, it was necessary that he should be named as owner, and have notice as such of the proceedings.

In McCay's Appeal, 1 Wr., 125, we held that the omission of the name of the contractor, when the work was done under a contract with one who was not the owner, was a fatal defect.

The reason given was that the name of the contractor is required by the statute to appear in the claim, and the absence of it is therefore fatal.

The same requirement is contained in the statute as to the name of the owner, and the omission of his name is equally fatal.   The case of Christine *v.* Manderson, 2 Barr, 363, is not applicable, as it was expressly held to arise under the Act of 1806, which does not require the name of either the owner or contractor to appear in the lien.   The objection to the *sci. fa.*, under the Act of 1808, that it did not contain the name of the owner, was held unavailing when made by the contractor, who was not the owner: Gaule *v.* Bilyeau, 1 Cas., 521, has no application, as it only relates to the interest of the tenant in the land under the lease from the owner, and on that subject there is no controversy in the present case.   Miller had an undoubted estate in seven of the lots under the agreement between him and Griel; and his description as owner, or reputed owner, is a full satisfaction of the requirement of the statute as to those lots.   But, as to the other two lots, he had no estate or interest in them; and his actual or reputed ownership of the seven lots could not embrace them except at the peril of subjecting the property of the owner of the two lots to judicial proceedings and sale without his knowledge.

Judgment affirmed.

LEHIGH COUNTY.

JANUARY TERM, 1881, No. 246.        MARCH 7TH, 1882.

# Appeal of W. H. Ainey *et al.*

1. The Orphans' Court has not jurisdiction to entertain a claim by a partner of the decedent against the estate of the latter, arising out of unsettled partnership transactions.

2. *Quære*, as to the right of an administrator to except to the findings of an auditor upon claims against the estate.

Before Sharswood, C. J.; Mercur, Gordon, Paxson, Trunkey, Sterrett, and Green, JJ.

Appeal of W. H. Ainey and Milton Appel, assignees for the benefit of creditors of John L. Hoffman, from the decree of the Orphans' Court of *Lehigh County*, sustaining exceptions to the report of the auditor appointed to distribute the estate of W. H. Hoffman, deceased.

W. H. Hoffman died intestate, and his estate was insolvent. His administrators, William H. Blumer and Susan Hoffman, filed an account, which the Court referred to John Rupp, as auditor, to resettle and distribute.

Before the auditor, W. H. Ainey and Milton Appel, assignees for the benefit of creditors of John L. Hoffman, presented a claim for a balance alleged to be due from the estate of the decedent, growing out of the partnership transactions of the firm of J. L. & W. H. Hoffman.

Counsel for the administrators objected to the claim, on the ground of want of jurisdiction upon the part of the auditor to investigate it.

The auditor reported, *inter alia:*

About May, 1858, John L. Hoffman and William H. Hoffman became partners in the lumber business, under the firm-name of J. L. & William H. Hoffman, and continued such until about the year 1870, when the firm was dissolved, but no final settlement was made of the firm's accounts. In the spring of 1873 William H. Hoffman died, and in the summer of 1877 John L. Hoffman died. No settlement was made, and balance struck of the affairs of the firm, during the lifetime of William H. Hoffman, nor was there a settlement made and balance struck between John L. Hoffman and the administrators or legal representatives of William H. Hoffman during the lifetime of the said John L. Hoffman. But it is now contended, on behalf of the estate of John L. Hoffman, that, on a final settlement of the affairs of the firm, there is a balance due the estate of John L. Hoffman, deceased. To prove this all the books of the firm, showing the dealings and transactions of the firm, and of the partners with each other, and with the firm from the formation of the partnership until its dissolution, are offered in evidence. And this is all the proof there is in the case on this subject. An examination of the accounts in these books, of the dealings of John L. Hoffman with the firm, and William H. Hoffman with the firm, and with each other, show an indebtedness of William H. Hoffman to John L. Hoffman, amounting to $5763.95, which, with interest added to date of filing this report, $1729.18, amounts to $7493.13. This

[Appeal of W. H. Ainey *et al.*]

conclusion the auditor has come to from an examination of the books of the firm, aided by certain statements and abstracts made of the books by James Hausman, Esq., one of the most competent accountants in this community. The auditor attaches no copies of the entries in the books from which he arrives at this conclusion, because both parties interested in this controversy stated that they did not desire it.

The auditor decided that he had jurisdiction, found the balance due, with interest, to be $7493.14, and allowed a *pro rata* distribution on the claim of $3053.22. He made, however, an alternative distribution, in case the Court should be of opinion that he had not jurisdiction.

An exception was filed, *inter alia,* to this finding.

The Court below, SASSAMAN, A. L. J., sustained the exception, saying, *inter alia :*

One thing is quite certain ; the Orphans' Court is a creature of the statutes, and in them we must look for its power. The Common Pleas is our common-law Court, and has power in all matters of law not provided for by statute, in the State of Pennsylvania, so far as remedies in that Court have been developed, leaving to the equity side of it such matters for which the law remedies are insufficient. This makes that Court a Court of general jurisdiction with us. The remedies known in that Court are always to be invoked when the statute provides no other. Whenever there is a statutory remedy, that must be followed, and whenever a statute is made in derogation of common-law rights, such statute must be strictly construed. Confronted with these principles, it is well known to us, as a matter of law, that the remedy at common law for account between partners is an action of account-render, or, by reason of its cumbersomeness, a bill in equity, on the equity side of the same Court, the latter being the more favored remedy, by reason of the greater flexibleness of the processes used in such a proceeding, and the chances of more correct and reliable results. Such an action has always been considered rather too complicated in the necessary details for a jury.

The principle is universally recognized that one partner cannot, on a claim before partnership settlement, maintain an action at law for the debt against another for anything received on partnership account, or for anything relating to partnership transactions while the partnership affairs remain unadjusted, on the ground that it would be impossible to determine whether anything be due the plaintiff, until an account of the partnership matters is taken : Ozeas *v.* Johnson, 4 Dallas, 434 ; Patton *v.* Ash, 7 S. & R., 116 ; McFad-

den *v.* Hunt, 5 W. & S., 468 ; Andrews *v.* Allen, 9 S. & R., 241 ; Carlile *v.* Weber, 2 W. N. C., 506 ; Ferguson *v.* Wright, 11 P. F. S., 258 ; Holmes *v.* Higgins, 1 B. & C., 76 ; Smith *v.* Allen, 18 Johnson, 245 ; Gomersall *v.* Gomersall, 14 Allen, 60 ; Francisco *v.* Fitch, 25 Barbour, 130 ; Smith *v.* Smith, 33 Mo., 557 ; Burns *v.* Nottingham, 60 Ill., 531.

This is not so in matters not connected with and not arising out of the partnership transactions : Roberts *v.* Fitler, 1 H., 265 ; Molony *v.* Davis, 12 Wr., 512 ; Crater *v.* Bininger, 45 N. Y., 545 ; Currier *v.* Rowe, 46 N. H., 72 ; Collamer *v.* Foster, 26 Vt., 75 ì ; Williams *v.* Henshaw, 11 Pickering, 84.

And it has been held that, to entitle a party to recover for a balance, this should be for a balance found to be due after a dissolution, and of such a balance as to admit of no new balances in reference to the partnership transactions, and free from claims and adjustments, making the balance so ascertained a final balance of an account stated : Williams *v.* Henshaw, 11 Pickering, 81 ; Killam *v.* Preston, 4 W. & S., 14.

And then there must be an express promise to pay, and this though the partnership has ceased to exist : Leidy *v.* Messinger, 21 P. F. S., 177.

Balances struck preparatory to a settlement are not sufficient. They must be final, or the remedy is in equity : Burns *v.* Nottingham, 60 Ill., 531.

Enough has been said to show that in a case like this there could be no recovery in an action at law, unless for an amount, and it remains for us now to see if this case is in such a shape that the powers of the Orphans' Court can embrace it.

The Orphans' Court, as it now stands in its more enlarged jurisdiction, was established by the Acts of 29th March, 1832, § 2, P. L., p. 190, Purdon's Digest, 1103, and by the Act of 14th April, 1834, § 52, P. L., p. 351, Purdon's Digest, 1103, having its powers more specially defined by the 19th section of the Act of 16th June, 1836, P. L., p. 792, Purdon's Digest, 1104, pl. 8, and by the 1st section of the Act 13th April, 1840, P. L., p. 319, Purdon's Digest, 446, pl. 200. These acts declare that there shall be holden and kept in every county of this State, a court of record styled the Orphans' Court, having all the qualities and incidents of a court of record at common law, and the jurisdiction of the several Orphans' Courts shall extend to and embrace the distribution of the assets and surplusage of the estates of decedents, after the settlement of the proper amounts among the creditors and others interested, and it is made the duty of the said Court to appoint auditors on the application of any creditor, heir, legatee, or other person interested in the distribution, to make

distribution to and among the persons entitled to the same. "These general terms of the act, it is said, embrace creditors as well as heirs, next of kin, and legatees.  The right to be heard by each in support of his claim, and in opposition to every claimant who interferes with it, is necessarily involved in the right to demand payment out of the fund.  The power to decide all questions necessary to a proper distribution of the fund follows the power of distribution, and rests in the Orphans' Court as a necessary incident of the jurisdiction :" 5 Harris, 416, Kittera's Estate; Bull's Appeal, 12 Harris, 288; Dundas's Estate, 23 P. F. S., 474; Gochenauer's Estate, 11 Harris, 460.

In matters of distribution of decedents' estates, the Orphans' Court alone has power, and, although this Court is of limited jurisdiction, when it is once invoked its power is commensurate with its duties: Shollenberger's Appeal, 9 Harris, 337; Whiteside *v.* Whiteside, 8 Harris, 473; Black *v.* Black, 10 C., 354; Mussleman's Appeal, 15 P. F. S., 480.

It thus appears that the powers of our Orphans' Court are really large, and comprehend a remedy for very many and various subjects of dispute in the settlement and distribution of estates.  Yet, with all these powers directly conferred and inferred by the construction put upon the acts of Assembly that the essentials for making distribution must follow the power contemplated, we fail to find anywhere that the Courts have assumed in the settlement of one estate to settle another estate.

It seems to us that the separate estate of a firm, with its assets and liabilities, is just as much an independent estate as the estate of any individual.  A firm is usually a partnership of individuals, who join together their capital for purposes of trade and manufacture to be used and carried on by a common management.  All the parties entering in the enterprise must usually either contribute money, material, labor or skill for the conduct of the business.  All that is contributed is liable for the debts or losses in the first instances, and, in case of the success of the joint adventure, then they may share in the profits.  If all the liabilities of the concern are satisfied, and when all the assets are collected, then the partners can make final settlement with the firm, and each may then draw from what is left.  Before that, no one has anything to get from such firm but by common consent, and he becomes chargeable to the firm for what he thus gets.  If the members have not contributed equally from their means, or if the said members have drawn in unequal amounts from the said firm, the members cannot claim to equalize the inequality directly from each other.  Before

[Appeal of W. H. Ainey *et al.*]

anything in this way can be done, there must be an adjustment and settlement of the partnership matters—as we, for the purposes of this case, call it—a settlement of the estate of the firm. And just here is where the difficulty, raised by this exception, comes into its greatest pinch. For, although as we have seen the claims of partners *inter sese* cannot be collected from each other by an ordinary suit at law until a balance is fixed, and that for this purpose bills in equity are preferred, and we have also ascertained that the jurisdiction of the Orphans' Court has large and various powers for aiding in the distribution of a decedent's estate, we are still driven to the conclusion that in order to make settlement and distribution of one estate, it cannot, by its equitable powers, reach over into another estate, and make settlement of that estate so as to settle the accounts of a partnership firm and adjust rights and liabilities of partners *inter sese.*

In order to entitle the estate of John L. Hoffman to have distribution out of the estate of William H. Hoffman, it is first necessary to establish and fix the claim of the former. This cannot be done until the partnership is settled and adjusted. The debts must be paid, the assets of the firm must be ascertained, the profits and losses must be balanced. Until all these things are done, it is not known how the firm stood. The auditor does not say he did this, and until it is shown that this was done, no one can say what the indebtedness of William to John was. All that the auditor says about it is that he finds the balance due with interest to be $7493.13, without presenting an account of the dealings of the firm; without finding that all firm-debts were paid; without finding what assets were left of the firm; without finding what each of the members of the firm had put in or drawn out; without stating whether there was profit or loss in the business. All these are certainly matters of great importance, to be ascertained before the auditor could come to any satisfactory conclusion in ascertaining a final and fixed balance due from one partner to his fellow-partner. In our estimation, the auditor attempted too much, and we could not sustain this part of his report. We think that this part of his report went beyond the powers of his appointment, and beyond the powers and jurisdiction of the Court, which appointed him, and which, in this particular, could not assume a concurrent jurisdiction of an action of an account-render or a bill in equity, with the Court of Common Pleas. The burden of settling such an account should also not be put upon the estate of any one of the partners of a firm, but it should be borne by the firm itself before the true balance for

or against any one of such partners can be properly and finally determined.

The assignees then appealed, assigning as error, *inter alia*, that the Court erred in sustaining the exception.

*R. E. Wright & Son*, for the appellant.

The Act of April 13th, 1840, giving to the Orphans' Court power to appoint auditors, gives it jurisdiction to hear and determine every claim against the fund. Though the amount of a partnership account be not ascertained, it is just as much a debt of the decedent as any other: Dundas's Appeal, 23 P. F. Smith, 481·; Whiteside v. Whiteside, 8 Harris, 473 ; Kittera's Estate, 5 Harris, 422; Bull's Appeal, 12 Harris, 288 ; Shollenberger's Appeal, 9 Harris, 337 ; Black v. Black, 10 Casey, 354 ; Ashford v. Ewing, 1 Casey, 213 ; Mussleman's Appeal, 15 P. F. Smith, 480 ; Otterson v. Gallagher, 6 W. N. C., 555.

The appellee had no standing to except to the distribution.

An administrator or trustee, being a mere stakeholder, cannot appeal on questions of distribution, even though he be a creditor, unless he appeals as a creditor: Stineman's Appeal, 10 Casey, 394 ; Mellon's Appeal, 8 Casey, 121 ; Gallagher's Appeal, 8 Norris, 29 ; Singmaster's Appeal, 6 Weekly Notes, 14 ; Craig's Appeal, 2 Wright, 330.

*Edward Harvey*, for the appellees.

The cases cited by the appellants have no bearing. It is assumed that the claimant here is a creditor, which is the very matter in dispute. · Until the balance is found, there is no relation of debtor and creditor between the partners. Even if the firm is, in fact, indebted to a partner his only right against the other is that of compelling an account.

One partner cannot maintain *assumpsit* against the other for the proceeds of a partnership adventure, unless they have settled their accounts, and struck a balance: Ozeas v. Johnson, 4 D., 434 ; Patton v. Ash, 7 S. & R., 116 ; McFadden v. Hunt, 5 W. & S., 468.

It is not enough that a balance may be deduced from the books of a firm: Andrews v. Allen, 9 S. & R., 241; Carlile v. Weber, 2 W. N. C., 506.

A partner cannot sue another for his share while their partnership accounts are unsettled : Dewit v. Staniford, 1 Root, 270 ; Murray v. Bogert, 14 Johns., 318 ; Robinson v. Green, 5 Harr., 115 ; Ives v. Miller, 19 Barb., 196 ; Killam v. Preston, 4 W. & S., 14 ; Ferguson's Admrs. v. Wright's Admrs., 11 P. F. Smith, 258.

Partnership accounts must be settled in a proceeding by

[Appeal of Paul Faust.]

account-render or bill in equity; until there has been a set-tlement of partnership accounts, *assumpsit* will not lie for advances, unless there has been an express promise to pay. This rule applies whether the property of the partnership has ceased to exist or not: Leidy *v.* Messinger, 21 P. F. Smith, 177.

The position taken by us is that the relation of debtor and creditor does not exist between partners until a settle-ment is made and balance struck. Before that is done, the liability of each partner is to account and not to pay: Fergu-son's Admrs. *v.* Wright's Admrs., 11 P. F. Smith, 262; Singizer's Appeal, 4 Casey, 524; Brown's Appeal, 8 Norris, 142; Knerr *v.* Hoffman, 15 P. F. Smith, 126.

Although it is true that an administrator is not "a party aggrieved" by an order of distribution, he is, nevertheless, a trustee for the parties beneficially interested, and as such represents those who may be aggrieved: Koch's Estate, 4 Rawle, 268.

It has been held that they may appeal from the valuation for collateral inheritance tax on the personal estate of a decedent: Comm *v.* Coleman's Admrs., 2 P. F. Smith, 468.

The cases cited by the appellants have no bearing on the question presented in this record. We have not appealed. We do not dispute the distribution ordered by the Court below. As administrators, we appeared in that Court and excepted to certain findings. When we did this, there was no objection made to our right to do so. The Court then corrected the errors complained of, and it is only the correct-ness of the decree, and not the mode in which it was reached, that is now the subject of review.

MARCH 20TH, 1882.—PER CURIAM: We affirm this decree upon the opinion of the learned judge in the Court below.

Decree affirmed, and appeal dismissed at the costs of the appellant.

JANUARY TERM, 1881, No. 149.        MARCH 6TH, 1882.

## Appeal of Paul Faust.

1. Where a dining-room and kitchen were erected as an addition to a house, and a door and window opened from the old structure into the new, a mechan-ics' lien, filed under the Act of May 1st, 1861, P. L., 550, need not be confined to the new structure.

2. The fact that the words "L or wing" are used in the lien instead of the word "addition," contained in the act of Assembly, does not invalidate the lien.